(C. D. 1115)

NOZAKI BROS. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 16, 1948)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Arthur R. Martoccia, Harold L. Grossman, Joseph E. Weil,* and *William J. Vitale,* special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: Plaintiff herein imported a quantity of stockfish from Japan and entered same for consumption at the port of Seattle, Wash., on October 29, 1940. In accordance with the provisions of the Food, Drug, and Cosmetic Act (U. S. C., title 21, section 381), the United States Federal Security Agency withdrew samples of the shipment in order to determine the question of its admissibility into the commerce of this country. The pertinent portion of said section 381 is as follows:

§381. IMPORTS AND EXPORTS—(a) IMPORTS; EXAMINATION AND REFUSAL OF ADMISSION.

The Secretary of the Treasury shall deliver to the Federal Security Administrator, upon his request, samples of food, drugs, devices, and cosmetics which are being imported or offered for import into the United States, giving notice thereof to the owner or consignee, who may appear before the Federal Security Administrator and have the right to introduce testimony. If it appears from

the examination of such samples or otherwise that (1) such article has been manufactured, processed, or packed under insanitary conditions, or (2) such article is forbidden or restricted in sale in the country in which it was produced or from which it was exported, or (3) such article is adulterated, misbranded, or in violation of section 355, then such article shall be refused admission. This paragraph shall not be construed to prohibit the admission of narcotic drugs the importation of which is permitted under section 173 of this title.

(b) SAME; DISPOSITION OF REFUSED ARTICLES. The Secretary of the Treasury shall refuse delivery to the consignee and shall cause the destruction of any such article refused admission, unless such article is exported by the consignee within three months from the date of notice of such refusal, under such regulations as the Secretary of the Treasury may prescribe: *Provided,* That the Secretary of the Treasury may deliver to the consignee any such article pending examination and decision in the matter on execution of a bond as liquidated damages for the amount of the full invoice value thereof together with the duty thereon and on refusing for any cause to return such article or any part thereof to the custody of the Secretary of the Treasury when demanded for the purpose of excluding it from the country or for any other purpose, such consignee shall forfeit the full amount of the bond as liquidated damages.

Said agency, under date of November 15, 1940, released the merchandise and allowed it to enter the commerce of the United States. Thereupon, it was released from customs custody and shipped to Chicago, Ill., by the importer. In January 1941, a quantity of stockfish, apparently the commodity described above, was returned to Seattle, Wash., but was found by the Federal Security Agency, after examination of samples, to be decomposed, and was exported to Canada without official customs supervision. The importer had requested customs supervision of the exportation but it was refused by the collector. The Federal Security Agency attempted to seize the merchandise but was unable to do so prior to its exportation.

Plaintiff claims that duty paid upon the importation should be refunded under the provisions of section 558 (a) (2) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, reading as follows:

**SEC. 558. NO REMISSION OR REFUND AFTER RELEASE OF MERCHANDISE.**

(a) No remission, abatement, refund, or drawback of estimated or liquidated duty shall be allowed because of the exportation or destruction of any merchandise after its release from the custody of the Government, except in the following cases:

\* \* \* \* \* \* \*

(2) When prohibited articles have been regularly entered in good faith and are subsequently exported or destroyed pursuant to a law of the United States and under such regulations as the Secretary of the Treasury may prescribe;

\* \* \* \* \* \* \*

The basis of plaintiff's claim is stated to be that this merchandise was "regularly entered in good faith"; that it was a "prohibited article" in that it was unfit for human consumption; and that it was subsequently exported.

The Government contends that the imported merchandise was not a "prohibited article" in its condition as imported, and even if the article exported has been proven to be the stockfish here involved, it became decomposed after and not before it was released from customs custody; and therefore is not subject to the provisions of section 558, *supra*, as amended. The Government does not deny that the entry was made in good faith.

We are unable to find from the evidence that the involved stockfish was a prohibited article, unfit for human consumption at the time of importation and release from customs custody. In the letter from the Food and Drug Administration of the Federal Security Agency (exhibit 6), the Acting Commissioner reports as follows:

> Our records do not appear to contain any information as to an examination of stockfish at Chicago. The seizure which we undertook to make at Seattle in January 1941 was based upon the finding of decomposition in official samples taken from the consignment after it arrived in Seattle, Washington. We are authorizing the Chief of our Seattle Station to permit you to inspect the sample summary on 55040–E giving the record of interstate shipment from Chicago to Seattle and results of analysis of the sample.

The above clearly relates to the state of the merchandise upon its return from Chicago to Seattle. Said exhibit 6 also shows that the attempted libel by the Federal Security Agency was directed against the interstate shipment:

> \* \* \* These two copies of documents are in our file 55040–E and were furnished to us by Nozaki Brothers in connection with a hearing accorded that firm to determine its responsibility in connection with the interstate shipment of a consignment of stockfish which we undertook to libel in Seattle in January 1941. We have no firsthand knowledge that the interstate consignment shipped from Chicago to Seattle was the same fish imported and released the previous October although we have no reason to believe otherwise. \* \* \*

It is plain from the record that the stockfish which was entered for consumption on October 29, 1940, and released from customs custody was not prohibited merchandise at the time of its release, was not denied entry, and therefore does not fall within the exception in said section 558.

For the reasons above given, the protest is overruled.

Judgment will be rendered for the defendant.